UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON E. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY EMPLOYMENT AND HUMAN SERVICES DEPARTMENT, et al.,<br><br>Defendants. | Case No. 16-cv-03738-MEJ<br><br>**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Dkt. No. 28 |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Contra Costa County Employment and Human Services Department (the "County"), Renee Giometti, and Cassandra O'Neal (together, "Defendants") move to dismiss Plaintiff Sharon Taylor's First Amended Complaint ("FAC"). *See* Mot., Dkt. No. 28; FAC, Dkt. No. 24. Plaintiff filed an Opposition (Dkt. No. 29), and Defendants filed a Reply (Dkt. No. 30). The Court previously found this matter suitable for disposition without oral argument, vacated the March 30, 2017 hearing, and took the matter under submission. Dkt. No. 32.

Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS IN PART** Defendants' Motion for the following reasons.

## BACKGROUND

**A.  Original Complaint**

Defendants moved to dismiss Plaintiff's original Complaint on the ground disability is not a protected class under Title VII of the Civil Rights Act of 1964 ("Title VII"). First Mot., Dkt. No. 14; *see* Compl., Dkt. No. 1. The Court granted the Motion and dismissed the Complaint without prejudice to allow Plaintiff to assert claims under the Americans with Disabilities Act

("ADA"). First Order, Dkt. No. 22. Plaintiff filed her FAC on January 13, 2017. Because Plaintiff is proceeding in forma pauperis, the Court screened the FAC and found it stated a claim for disability discrimination under the ADA:

> As is relevant here, the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regards to the hiring, advancement, compensation, job training, and other terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a). "Discrimination" includes limiting the employee in a way that adversely affects her opportunities because of her disability; excluding or otherwise denying equal jobs or benefits to a qualified individual because of her disability; and not making reasonable accommodations for the employee. *Id*. § 12112(b). Plaintiff alleges that she is disabled, that as a result of her disability she was treated less favorably by her supervisors Cassandra O'Neal and Renee Giometti, and that O'Neal failed to accommodate her disability. Plaintiff also alleges that O'Neal and Giometti retaliated against Plaintiff after she filed an Equal Employment Opportunity Commission complaint regarding her supervisors' discriminatory practices. Plaintiff further alleges that O'Neal and Giometti harassed and bullied her and created a hostile work environment, although it is not clear from the allegations how Plaintiff contends this conduct was connected to her disability.
>
> Based on the foregoing, the Court finds the FAC, for purposes of screening pursuant to 28 U.S.C. § 1915(e)(2), states claims under the ADA for disability discrimination.

*See* Second Screening Order, Dkt. No. 26.

**B.  Allegations of the FAC**

Plaintiff is a visibly-disabled individual with a mobility impairment who has worked for the County since May 2006.[1] Plaintiff organizes the allegations in the FAC into five categories: disability accommodations; harassment; hostile work environment; retaliation; and isolation. *See* FAC. The Court construes these as alleging three forms of disability discrimination: failure to accommodate, retaliation, and harassment/hostile work environment.[2]

---

[1] Defendants suggest Plaintiff insufficiently alleges she suffers from a disability, but they do not actually challenge whether she is disabled. Mot. at 5. In response, Plaintiff provides greater detail about her disability, and argues these details are included in the FAC. Opp'n at 5. These details are not included in the FAC. *See* FAC.

[2] Title II of the ADA proscribes the exclusion of qualified individuals with a disability from participation in a public entity's services, programs, or activities. *See Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1170 (N.D. Cal. 2009) (citation omitted). Courts analyzing Title II claims frequently refer to "isolation" of persons with disabilities. Plaintiff is not alleging Defendants

2

Since 2008, the County has provided Plaintiff a scooter as a reasonable accommodation. Plaintiff nonetheless alleges the County failed to provide her with a reasonable accommodation because: (1) Defendants failed to maintain the scooter during three periods when Plaintiff was out on medical leave, causing it to be delivered to Plaintiff in non-working order when she returned from leave; (2) when Plaintiff returned from medical leave in 2013, she was supervised by O'Neal and Giometti, and it took Defendants 12 weeks to have her scooter repaired; (3) Defendants did not provide alternative accommodation during the first 6 weeks Plaintiff's scooter was broken, and it was not until Plaintiff's union got involved that Defendants gave her administrative leave for the next 6 weeks it took them to have the scooter fixed; (4) when Plaintiff worked for a new supervisor in 2015, her scooter was repaired in 5 days; (5) after O'Neal reprimanded Plaintiff for failing to leave the scooter plugged in overnight on several occasions in 2014, the scooter vendor explained that the scooter should only be charged when the battery was low, and that the scooter battery exploded because it had been overcharged; (6) O'Neal demanded Plaintiff provide medical verifications of her disability repeatedly, despite the fact Plaintiff's disability has always been established as permanent; (7) when she returned from medical leave in April 2012, Defendants denied her request to return to a "4/10 work schedule because [she] had 'been gone too long'" but another employee who was on maternity leave for the same period of time was allowed to have her 4/10 schedule back[3]; and (8) Plaintiff "made several suggestions to Ms. O'Neal" to help Plaintiff perform her job better, such as having group meetings as opposed to having one-on-one meetings with clients; O'Neal refused, but other employees adopted the suggestion and teamed up together, although they declined to team up with Plaintiff. FAC at 2-3.

Plaintiff alleges O'Neal harassed her by (1) accusing her of abusing sick leave in 2012

---

discriminated against her by excluding her from participating in a public entity's service, but in the terms and conditions of her employment, which is covered by Title I of the ADA (Employment) and Title V (Miscellaneous, including retaliation). Title II of the ADA does not apply to employment in the Ninth Circuit. *See Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1183-84 (9th Cir. 1999). The Court accordingly analyzes Plaintiff's allegations pertaining to isolation in the context of her other claims, particularly her claim for harassment/hostile work environment.

[3] Defendants argue this allegation falls outside the 300-day limitations period because Plaintiff did not file her EEOC Complaint until September 2013. Mot. at 2 (citing Compl. ¶ 8).

3

without investigating the reason why Plaintiff took leave and then requiring Plaintiff to provide medical verification each time she used sick leave; (2) intentionally humiliating her in connection with weekly unit meetings by congratulating staff for "not having any CAT 38 cases . . . 'with the exception of one member who[] had 2" when there were only 8 workers in the unit and it therefore was "not hard to narrow" down whom O'Neal was identifying as the exception; (3) congratulating another employee publicly but never congratulating Plaintiff publicly for performing at the same level; (4) making "accusations and reprimands without full information"; and (5) describing a former co-worker as "fat" and having "a body odor" when Plaintiff was the only "fat" person in her unit. FAC at 3-4.

Plaintiff also alleges O'Neal created a hostile work environment by (1) asking Plaintiff's co-workers and clients to report errors by Plaintiff, thereby undermining her relationships with these groups; (2) reprimanding Plaintiff based on co-workers' reports, without giving her an opportunity to explain her side of the story; (3) not promoting Plaintiff; (4) not giving Plaintiff approval to perform volunteer work, once telling her "you know how you are" and stating Plaintiff did not have a car, but another co-worker with less than one year of service was "called to volunteer and earn a stipend"; (5) "spread[ing] word" to management that Plaintiff is "a troublemaker" and thus depriving her of promotional and volunteer opportunities; (6) not timely completing an incident report in 2013 after Plaintiff had a near fall; (7) denying Plaintiff breaks and charging her vacation time for hours she actually worked; (8) discouraging other employees from visiting Plaintiff at her work station; (9) not including Plaintiff in informal pod meetings; and (10) hiding Plaintiff's drink at a unit meeting once and pretending not to know what happened to it. *Id.* at 5-8.

Finally, Plaintiff alleges O'Neal and Giometti retaliated against her for filing an EEOC complaint by (1) refusing to reschedule a mandatory training; (2) not redistributing her case load when she was out on administrative leave in 2013 in violation of office protocol; (3) reprimanding Plaintiff for mistakes other workers made while processing her cases; (4) giving Plaintiff additional cases to oversee, thereby exceeding Plaintiff's caseload maximum; and (5) inundating Plaintiff with additional work normally performed by other employees and by failing to transfer

4

inactive cases off of Plaintiff's docket. *Id.* at 6.

## **LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

5

1 to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.   Title VII**

"Title VII does not encompass discrimination on the basis of disability. 42 U.S.C. sec. 2000e-2." *Davis v. Team Elec. Co*., 520 F.3d 1080, 1093 n.8 (9th Cir. 2008). Plaintiff already conceded she cannot pursue a claim for disability discrimination under Title VII. *See* Non-Opp'n, Dkt. No. 21. Although the FAC references Title VII on its first page, it does not appear Plaintiff is attempting to bring a claim under Title VII. *See* FAC. Plaintiff also concedes once more that Title VII does not cover disability, and agrees to abandon that claim. To clarify the record, the Court once more grants Defendants' Motion to Dismiss and confirms that Plaintiff's claim for disability discrimination under Title VII is dismissed with prejudice.

**B.   Individual Defendants O'Neal and Giometti**

Defendants seek to dismiss the action as to individual defendants O'Neal and Giometti, as "individual defendants cannot be held personally liable for violations of the ADA." Mot. at 5 (quoting *Walsh v. Nev. Dep't of Human Res*., 471 F.3d 1033, 1038 (9th Cir. 2008)). Plaintiff concedes she cannot bring an ADA claim against these two individual defendants. *See* Opp'n at 4. The Court grants Defendants' Motion to Dismiss as to O'Neal and Giometti, with prejudice.

**C.   ADA**

In order to state a claim for disability discrimination under the ADA, Plaintiff must allege that she: (1) suffers from a disability; (2) is otherwise qualified to do her job; and (3) was subjected to an adverse employment action because of her disability. *See Humphrey v. Memorial Hospitals Ass'n,* 239 F.3d 1128, 1133 (9th Cir. 2001).

1.   Failure to Accommodate

Under the ADA, a defendant's "failure to provide reasonable accommodation to 'an otherwise qualified individual with a disability' constitutes discrimination." *Kaplan v. City of Las Vegas,* 323 F.3d 1226, 1232 (9th Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)). Defendants

argue Plaintiff's ADA claims fail because she insufficiently alleges that Defendants failed to accommodate her.

### *i.   Scooter-related allegations*

Plaintiff's failure to accommodate claim is largely based on the County's failure to keep her scooter charged and in good working order while she was out on medical leaves; as a result, she was unable to use her scooter for some time upon returning from medical leaves in 2012, 2013 and 2015. *See* FAC at 2-3. Plaintiff does not allege how long she was without a scooter in 2012; she alleges she was without a scooter for 12 weeks in 2013 when she was supervised by O'Neal and Giometti, and 5 days in 2015, when she worked with a new supervisor.

These allegations do not state a claim, as "[d]elay *alone* does not establish a violation of the ADA." *Frick v. Local 23 of Int'l Longshore & Warehouse Union*, 2014 WL 1047950, at *6-7 (W.D. Wash. Mar. 14, 2014) (emphasis added); *see also Wilson v. Dalton*, 24 Fed. App'x 777, 778 (9th Cir. 2001) (delay in providing accommodation did not establish triable issue of fact that defendant retaliated against plaintiff where defendant produced evidence delay was caused by innocent mistake or reasonable decisions); *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (twenty-month delay in providing accommodation did not violate ADA where evidence showed employer acted in good faith, but it took long time for vacant position to become available); *West v. N.M. Taxation & Revenue Dep't.*, 757 F. Supp. 2d 1065, 1122–26 (D. N.M. 2010) (three-month delay in providing agreed-upon accommodation did not constitute adverse employment action to satisfy necessary element of retaliation claim); *Krocka v. Riegler*, 958 F. Supp. 1333, 1342 (N.D. Ill. 1997) (noting "unreasonable delay in implementing a reasonable accommodation" can be discriminatory, but declining to hold an 8-month delay in providing accommodation was unreasonable as a matter of law); *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 203 (S.D.N.Y. 1999) (three-week delay in providing accommodation "clearly reasonable" in light of obtuse nature of the reason for and type of accommodation requested).

The FAC does not allege that Defendants contributed to or could control the reasons for the delays, that the delays in 2012 or 2015 were unreasonable, or that Defendants did not act in good faith in connection with maintaining or repairing the scooter. *See Selenke v. Med. Imaging*

7

*of Colo.*, 248 F.3d 1249, 1262-63 (10th Cir. 2001) (courts evaluating unreasonableness of delay look to length of delay, reasons for delay, whether employer offered alternative accommodations during delay, and whether employer acted in good faith). In short, the FAC only alleges three periods of delay between 2008 and 2015 when Plaintiff's scooter needed to be repaired by an outside vendor. These allegations do not allow the Court to draw the reasonable inference that the delays, without more, constitute a failure to accommodate. *See Iqbal*, 556 U.S. at 678.

Finally, Plaintiff does not allege that she was harmed by the delays. *See* FAC at 2-3. In the context of analyzing whether a plaintiff had established she suffered an adverse employment action in retaliation for asserting protected rights, the First Circuit found that while "a delay in providing the accommodations needed to meet a disability may cause" significant harm, mere inconvenience was insufficient to state a claim. *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 20 (1st Cir. 2006). The FAC includes no allegations regarding the impact of the delays on Plaintiff, let alone that she was more than merely inconvenienced.[4]

        *ii.    Remaining Allegations*

Plaintiff's allegations regarding O'Neal's refusal to let her return to an alternative schedule in April 2012 are not actionable as they took place more than 300 days before Plaintiff filed her EEOC complaint in September 2013. *See Wyatt v. City of Burlingame*, 2017 WL 565303, at *5 (N.D. Cal. Feb. 13, 2017) ("To exhaust administrative remedies under [the ADA], a plaintiff must file a charge with the EEOC within 300 days of the alleged unlawful employment practice . . . .").

Plaintiff does not allege she suggested group meetings as an accommodation for her disability; she only alleges this would have "helped" her to perform her job "better." Plaintiff also does not allege Defendants prevented her from participating in the group meetings when other co-workers started to use that model; she only alleges her co-workers declined to team up with her,

---

[4] Plaintiff does not allege, for example, that the administrative leave was unpaid, and that as a result, she suffered adverse employment consequences in the form of lost income. Defendants note that providing unpaid leave during 6 of the 12 weeks during which the scooter was not operational "may be a reasonable accommodation." Mot. at 6 (quoting *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)). The Court does not address whether unpaid leave in these circumstances would be a reasonable accommodation.

1 and she did not understand why. This does not allow the Court to draw the reasonable inference
2 that Defendants are liable for any misconduct.

Defendants argue they were entitled to verify Plaintiff's disability. *See* Mot. at 7. While an employer is entitled to verify the need for an employee to receive accommodation under the ADA (*see, e.g.*, *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000)), the logic for ongoing requests for verification is missing given Plaintiff's allegation that her prognosis has "always" been established as "permanent" (FAC at 3). But Plaintiff does not allege the requests for multiple verifications resulted in the unreasonable delay or in the ultimate denial of accommodation, whether in the form of a scooter or another requested accommodation. *See Ravel v. Hewlett-Packard Enters., Inc.*, 2017 WL 118009, at *8 (E.D. Cal. Jan 11, 2017) (there is no stand-alone claim for failure to engage in the interactive process under the ADA); *cf. Anderson v. Ross Stores, Inc.*, 2000 WL 1585269, at *8 (N.D. Cal. Oct. 10, 2000) (employee may be able to state failure to accommodate claim by alleging employer has "effectively denied" request for accommodation by "excessively delaying" the modification). Plaintiff alleges Defendants have provided her with a scooter since 2008, and the Court has found Plaintiff has not stated a failure to accommodate claim based on the three occasions during which her scooter was not functional between 2008 and 2015. Accordingly, without more, the Court cannot find that the multiple requests for verification state a claim for failure to accommodate or failure to engage in the interactive process. As discussed further below, however, this allegation could support Plaintiff's claim for harassment/hostile work environment.

    *iii.* *Summary*

The FAC alleges Defendants have provided Plaintiff with reasonable accommodation in the form of a scooter since 2008. That the scooter was not functional when Plaintiff returned from an extended leave on three occasions over seven years does not, without more, state a claim for failing to provide reasonable accommodations. Neither do the remaining allegations in the FAC. Accordingly, Defendant's Motion to Dismiss the failure to accommodate claim is granted.

  2. <u>Retaliation</u>

To state a claim for retaliation under the ADA, Plaintiff must show (1) she engaged in

protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the two. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). An "adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privilege . . . of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). The action must be sufficiently severe that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White* ("*White*"), 548 U.S. 53, 57 (2006) (analyzing Title VII retaliation claim).

The Ninth Circuit interprets "adverse employment action" "expansive[ly]". *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000). Any action that "is reasonably likely to deter employees from engaging in protected activity" is cognizable as an adverse employment action. *Id.* at 1243 ("The EEOC has interpreted 'adverse employment action' to mean 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity'" and "does not limit what type of discrimination is covered, nor does it prescribe a minimum level of severity for actionable discrimination."). "[D]emotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees" can all constitute adverse employment actions. *Id.* at 1241.

Defendants contend Plaintiff does not state an ADA retaliation claim because she does not allege Defendants fired, demoted, or transferred her, and because she also does not tie the alleged failure to promote or denial of volunteer opportunities to Plaintiff's filing of the EEOC complaint. Mot. at 10.

Plaintiff alleges Defendants retaliated against her for filing an EEOC complaint regarding O'Neal and Giometti's discriminatory practices. FAC at 6. "There is no doubt that filing grievances and pursuing constitutional and statutory remedies are protected activities." *McFadden v. City of El Centro*, 2014 WL 1365661, at *2 (S.D. Cal. Apr. 4, 2014). The only EEOC complaint in the record is a September 2013 EEOC complaint Plaintiff references in the FAC and original complaint. The only allegation of retaliation allegedly connected to that EEOC complaint is O'Neal's refusal to reschedule a mandatory training class; the remaining allegations pertain to

10

events predating the filing of that complaint. *See* FAC at 6. Rescheduling a mandatory training class, without more, does not rise to the level of adverse employment action. *See Davis*, 530 F.3d at 1089; *Nichols v. Billington*, 402 F. Supp. 2d 48, 66 (D. D.C. 2005) (denial of training opportunities does not constitute adverse employment action absent allegation that denial inflicted any significant, tangible harm on employment status); *cf. Strother* v. *So. Cal. Permanente Med. Grp*., 79 F.3d 859, 869 (9th Cir. 1996) (analyzing discrimination claim brought under California Fair Employment and Housing Act, and finding an employee could point to a materially adverse consequence where the employee was excluded from educational seminars and other activities that would have put her in a position for merit pay increases).

But Plaintiff also alleges that Defendants retaliated against her for taking administrative leave in 2013, which she took because of the (at that point) 6-week delay in fixing her scooter. Defendants characterize this administrative leave as an accommodation for Plaintiff's disability; thus Plaintiff's administrative leave was a protected activity under these circumstances. Plaintiff alleges Defendants retaliated against her by not redistributing her caseload during her time on leave, in violation of department "protocol", inundating her with work thereafter, and assigning her additional tasks typically performed by other categories of employees. FAC at 6. Under the Ninth Circuit's adverse employment action standard, an employee who alleged her employer excluded her from meetings, increased her workload, denied her secretarial support, and affected her ability to earn merit-pay increases sufficiently alleged adverse action (*Strother*, 79 F.3d at 869); as did an employee who alleged he had received an underserved negative performance review and whose employer refused to consider him for promotion (*Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). A significant change in work assignments is also "a classic and widely recognized example of forbidden retaliation." *White*, 548 U.S. at 70-21 (internal quotation marks and citation omitted) ("Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable.").

Plaintiff's allegations are sufficient to state a claim that, as a result of taking protected

11

leave, Defendants retaliated against her by significantly changing her conditions of employment, by failing to follow "protocol" and reassign cases while Plaintiff was on leave, increasing her work load, and assigning tasks to her that were normally done by other categories of employees. Defendants' Motion to Dismiss Plaintiff's retaliation claim is denied.

### 3. Hostile Work Environment

The Ninth Circuit has not determined whether a plaintiff can maintain a hostile work environment claim under the ADA. *See Rodriguez v. John Muir Med. Ctr.*, 2010 WL 1002641, at *3 (N.D. Cal. Mar. 18, 2010) (citing *Brown v. City of Tuscon,* 336 F.3d 1181, 1190 (9th Cir. 2003) (declining to decide the issue)); *see also Garity v. APWU Nat'l Labor Org.*, 655 Fed. App'x 523, 524 (9th Cir. 2016) (assuming without deciding that such a claim exists in the Ninth Circuit, and affirming district court dismissal of ADA hostile work environment claim because allegations did not meet demanding standard for stating such claim). However, other circuits have addressed this issue. "To succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers v. S. Reg'l Physician Servs., Inc.,* 247 F.3d 229, 232 (5th Cir. 2001). Defendants argue the FAC does not state a claim for harassment because it does not allege facts sufficient to show Plaintiff was subjected to severe or pervasive harassment sufficient to alter the terms and conditions of her employment. Mot. at 7.

In order to "affect a term or condition of employment," harassment has to be "sufficiently severe or pervasive" and create an abusive work environment. *Keller–McIntyre v. S.F. State Univ.*, 2007 WL 776126, at *13 (N.D. Cal. Mar. 12, 2007) (citing *Flowers*); *see also Carmona-Rivera*, 464 F.3d at 19 ("There is no mathematically precise test we can use to determine whether" conduct was sufficiently "severe or pervasive that it altered the terms of employment. . . . instead, we evaluate the allegations and all the circumstances, considering the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a

12

mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." (internal quotation marks and citation omitted)). "[R]udeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." *Carmona-Rivera*, 464 F.3d at 19 (internal quotation marks omitted); *Brooks*, 229 F.3d at 929 ("[B]admouthing an employee outside the job reference context" does not constitute an adverse employment action; "holding an employer liable because employees refuse to associate with each other might well be unconstitutional"); *Nichols*, 402 F. Supp. 2d at 68-69 (plaintiff could not state hostile work environment claim based on allegation employer pitted other employees against her). But allegations that a defendant "specifically encouraged" co-workers to ostracize Plaintiff "might" state a claim. *See Bergin v. N. Clackamas Sch. Dist.*, 2005 WL 66069, at *13 (D. Or. Jan. 12, 2005). A plaintiff must allege she was subjected to ridicule, insult, or harassment that was "objectively and subjectively offensive behavior that a reasonable person would find hostile or abusive." *Carmona-Rivera*, 464 F.3d at 19 (internal quotation marks and edits omitted).

Many of the FAC's allegations depict conduct that does not rise to the required level of offensiveness. Hiding Plaintiff's drink, taking a photograph of her scooter, congratulating other co-workers publicly but not congratulating Plaintiff, sending emails that recognize the group's overall performance with one (unnamed) exception, and excluding Plaintiff from informal pod meetings might have been unpleasant to Plaintiff, but these acts do not—as pleaded—depict the type of pervasive harassment courts have found sufficient to state a claim. *See supra*. Other allegations, however, depict an ongoing pattern of behavior that could rise to the required level of offensiveness. For example, accusing Plaintiff of abusing sick leave without any investigation, repeatedly demanding Plaintiff verify her disability although she has always been classified as "permanently" disabled, soliciting Plaintiff's co-workers to report any errors about Plaintiff's work to O'Neal, labeling Plaintiff as a "troublemaker" such that she was denied on volunteer and promotional opportunities, encouraging Plaintiff's clients to call O'Neal with any issues they had with Plaintiff, denying her breaks and charging her vacation time for hours she actually worked, and failing to promote (FAC at 3-7) are "objectively and subjectively offensive behavior that a reasonable person would find hostile or abusive." But as the Court observed earlier, "it is not

13

clear from the allegations how Plaintiff contends this conduct was connected to her disability." Second Screening Order at 2. Because Plaintiff fails to allege that this conduct was based on her disability, these allegations do not state a claim for hostile environment/harassment. *See id.*

Plaintiff also does not plead facts sufficient to show the denial of volunteer opportunities was related to her disability (as opposed to O'Neal's belief that Plaintiff did not have a car or O'Neal spreading rumors that Plaintiff was a troublemaker), or constituted an adverse employment action. Plaintiff further alleges Defendants failed to promote her. *See* FAC at 5. As pleaded, it is not clear whether the failure to promote is tied to O'Neal and Giometti's describing Plaintiff as a "troublemaker," to Plaintiff's disability, or to something else. Because Plaintiff does not allege the failure to promote was based on her disability, she does not state a claim for hostile work environment/harassment.

Finally, Plaintiff alleges O'Neal failed to complete an incident report within the required 24 hours after Plaintiff suffered a near fall. FAC at 5. It is not clear how this allegation supports her disability discrimination claim.

Assuming the Ninth Circuit would decide a harassment/hostile work environment claim exists under the ADA, the undersigned nonetheless finds Plaintiff has failed to plead such a claim.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's retaliation claim is denied, but the Court grants Defendants' Motion to Dismiss in part as follows:

(1) Plaintiff's claim for disability discrimination under Title VII is dismissed with prejudice;

(2) Each of Plaintiff's ADA claims against individual defendants O'Neal and Giometti are dismissed with prejudice; and

(3) Plaintiff's claims for failure to accommodate and harassment/hostile work environment are dismissed without prejudice. Plaintiff may amend these claims one final time and must do so no later than May 8, 2017.

**IT IS SO ORDERED.**

Dated: April 12, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge