UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON E. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY EMPLOYMENT AND HUMAN SERVICES DEPARTMENT,<br><br>Defendant. | Case No. 16-cv-03738-MEJ<br><br>**ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 38 |

## INTRODUCTION

Plaintiff Sharon Taylor alleges her employer, Defendant Contra Costa County, violated the Americans with Disabilities Act (ADA) by retaliating against her for filing a complaint with the Equal Employment Opportunity Commission (EEOC); failing to provide her with reasonable accommodations; and creating a hostile work environment. *See* Second Am. Compl. (SAC), Dkt. No. 35; *see also* Order Screening SAC, Dkt. No. 37 (finding that Plaintiff stated an ADA claim against Defendant for purposes of screening pursuant to 28 U.S.C. § 1915(e)(2), but noting Plaintiff had not addressed many of the deficiencies the Court listed in its order dismissing in part the First Amended Complaint (FAC, Dkt. No. 24)). Defendant now moves to dismiss the discrimination and hostile work environment claims. Mot., Dkt. No. 38. Plaintiff filed an Opposition (Dkt. No. 45), and Defendant filed a Reply (Dkt. No. 47). The Court finds this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78; Civ. L.R. 7-1(b).

## DISCUSSION

**A.  Order re FAC**

The Court summarized Plaintiff's allegations, set forth the applicable legal standards, and analyzed the merits of Plaintiff's claims in its Order granting in part and denying in part

Defendants'[1] Motion to Dismiss the FAC. *See* Order re FAC, Dkt. No. 33. The Court also explained the deficiencies in the FAC that required dismissal:

(1) Plaintiff failed to allege Defendants contributed to or could control the reasons for the delays in repairing her scooter; that the delays in 2012 or 2015 were unreasonable; or that Defendant did not act in good faith in connection with maintaining or repairing the scooter. *See* Order re FAC at 7-8 ("In short, the FAC only alleges three periods of delay between 2008 and 2015 when Plaintiff's scooter needed to be repaired by an outside vendor. These allegations do not allow the Court to draw the reasonable inference that the delays, without more, constitute a failure to accommodate.").

(2) Plaintiff failed to allege she was harmed by the delay. FAC at 8 ("The FAC includes no allegations regarding the impact of the delays on Plaintiff, let alone that she was more than merely inconvenienced."). In a footnote, the Court added: "Plaintiff d[id] not allege, for example, that the administrative leave was unpaid, and that as a result, she suffered adverse employment consequences in the form of lost income. Defendants note that providing unpaid leave during 6 of the 12 weeks during which the scooter was not operational 'may be a reasonable accommodation.'" Order re: FAC at 8 n.4 (citing FAC Mot. at 6, Dkt. No. 28 (quoting *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)). "The Court d[id] not address whether unpaid leave in these circumstances would be a reasonable accommodation." *Id.*

(3) Plaintiff's allegations regarding her supervisor's refusal to let her return to an alternative schedule in April 2012 were not actionable as they took place more than 300 days before Plaintiff filed her EEOC complaint in September 2013. *Id.* at 8.

(4) Plaintiff alleged her supervisors rejected her suggestions she conduct group client meetings, but did not allege she suggested group meetings as an accommodation for her disability; she only alleged this would have "helped" her to perform her job "better." Plaintiff also did not allege Defendants prevented her from participating in

---

[1] Contra Costa County and former Defendants Renee Giometti and Cassandra O'Neal. *See also* Order re FAC at 6 (dismissing Giometti and O'Neal).

the group meetings when other co-workers started to use that model; she only alleged her co-workers declined to team up with her, and she did not understand why. This did not allow the Court to draw the reasonable inference that Defendants are liable for any misconduct. *Id.* at 8-9.

(5) Plaintiff alleged no facts showing her supervisors' harassing conduct was based on her disability. *Id.* at 13-14.

**B.     New Allegations in the SAC**

1.     Failure to Accommodate

Plaintiff alleges Defendant acted in bad faith in 2013 by failing to communicate with her about the status of repairs to her scooter and failing to offer any accommodation to her for the first six weeks of disrepair. SAC at 3. "The first six weeks [she] worked without any accommodation while waiting to have the scooter repaired by [her] agency." *Id.* She went on administrative leave after the first six weeks because she "could no longer physically perform [her] job due to extreme weakness and pain." *Id.* at 4.

Plaintiff also alleges Defendant acted in bad faith because when she returned from her second medical leave in January 2015, the scooter was delivered in non-working status, and it took five days for the vendor to repair it (as opposed to the six weeks it took when Plaintiff's previous supervisor was in charge of the repairs). *Id.*

Plaintiff's former supervisor, Cassandra O'Neal, had complained about Plaintiff taking more time than other workers to conduct her interviews. *Id.* As an accommodation, Plaintiff made several requests to have group meetings with clients rather than one-on-one meetings. *Id.* She also asked to be allowed to conduct phone interviews with clients because this would save interview time. *Id.* O'Neal denied the requests when Plaintiff made them, but Defendant subsequently adopted a policy allowing group meetings and phone interviews. *Id.* Plaintiff's coworkers did not want to conduct group meetings with her. *Id.*

2.     Motivation of Supervisors

Plaintiff alleges her supervisors' conduct was motivated by her disability because she was the only visibly-disabled person in her unit, and they treated her differently than they treated other

3

employees. *See id.* at 11 ("I was the only coworker in that unit who was treated this way, and the action of Ms. O'Neal and Giometti were directed as portraying me as an unqualified worker by giving me undeserved negative performan[ce] evaluations/reviews and memos (that were not in line with agency protocols. . . .")). To support her allegation that she was treated differently, Plaintiff identifies the following new facts:

Plaintiff took a voluntary demotion in February 2009 from Worker III to Worker II. *Id.* at 2 ("I feel that Ms. O'Neal has held the voluntary demotion against me, while at the same time (two to three years or so later), a fellow co-worker (not disabled) also requested a demotion, for the similar reason of the demands of her caseload and work quality, but Ms. O'Neal, instead, publicly praised her for that co-worker's integrity.").

O'Neal consistently made remarks regarding Plaintiff being slower at performing interviews than her co-workers. *Id.* at 11.

3. Attachments to the SAC

Plaintiff attaches to the SAC a number of documents that appear to be memoranda and Standards of Conduct and Policies of the Employment and Human Services for Contra Costa County where Plaintiff worked.

In an October 19, 2001 memo, Director Cullen wrote to "All Staff" confirming

> that improvement in professional behavior will be another major goal or theme for this department. . . . Inappropriate behaviors . . . including . . . harassment, condescending behavior, undermining others . . . must stop. . . .
>
> To restate department policy, inappropriate actions, behavior and/or comments concerning race, gender, religion, national origin, disability, ethnicity, political affiliation, or age, cannot and will not be tolerated. In the workplace, such statements create a hostile work environment, are hurtful, divisive, and often illegal. . . . Beyond these protected classes, basic civility, courtesy, and support is expected among and with all staff.

*Id.* at ECF p.13.

"Standards of Conduct" dated December 2007 explain harassment, including harassment on the basis of disability, is unlawful and also against County policy. *Id.* at ECF p.14.

A "Notice of County Non-Discrimination and Anti-Harassment Policies" effective

4

December 2007 explains that "[h]arassment can consist of ridicule, jokes, comments, slurs, or actions which refer to, or are induced by, a person's membership in a protected class and are unwelcome by the employee." *Id.* at ECF p.15.

The County Regulations and Policies also warn staff to refrain from engaging in "excessively negative behavior" including rudeness, being sarcastic, and being disrespectful. *Id.* at ECF p.19. They also state it is the policy of the County to comply with all applicable state and federal statutes and regulations prohibiting discrimination in employment, and in addition, that employees are entitled to a workplace free from harassment. *Id.* at ECF p.22. The policy states that supervisors have an affirmative and legal duty and responsibility to report all allegations of harassment or discrimination to their managers or supervisors, that the agency will fully comply with its policies and will not tolerate discrimination or harassment, and that reports of violations will be promptly investigated and appropriate disciplinary action taken if warranted. *Id.* The policy also prohibits "more subtle forms of harassment, such as threats, name-calling, use of slurs, innuendo, or misrepresentation of actions or intent to damage an employee's reputation." *Id.*

Plaintiff also attaches a 2011 article by R. Weaver titled "Coping with the Stigma of Having a Physical Disability," which generally describes this problem but does not specifically relate to Plaintiff or Defendant. *Id.* at ECF pp. 24-27.

**B.    Analysis**

      1.    Failure to Accommodate

The Court previously explained that delay in providing an accommodation, without more, does not state a claim for failure to accommodate. The SAC fails to allege facts sufficient to show Defendant contributed to the delay in repair, or could control the timing of the repair. The SAC therefore still does not state a claim for failure to accommodate based on alleged delays in repairing Plaintiff's scooter.

However, the SAC also includes new allegations regarding Defendant's failure to engage in the interactive process mandated by the ADA. "Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Ravel v. Hewlett-Packard Enters., Inc.*,

5

228 F. Supp. 3d 1086, 1097 (E.D. Cal. 2017) (quoting *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001)). The duty to accommodate is a continuing one:

> [i]f a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship. . . . [T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work. . . .

*Humphrey*, 239 F.3d at 1138; *see also E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110-11 (9th Cir. 2010) (describing interactive process and continuing obligation to engage therein).

The SAC alleges Defendant failed to offer any type of accommodation during the first six weeks Plaintiff's scooter was broken in 2013 but still required Plaintiff to perform her job during this time. Defendant was aware Plaintiff needed an accommodation to perform her work, as she had been given the scooter as an accommodation since 2008. Once the scooter was unusable, it became an ineffective accommodation, and Defendant was obligated to reengage in the interactive process at this point. Defendant did not, and Plaintiff continued to perform her work to the point she was so weak and in pain that she needed to take leave for the next six weeks. Defendant did not offer paid leave until Plaintiff's union became involved. *See also* Opp'n at 2 ("Defendant acted in bad faith by not providing any accommodations sooner even though I continued to work for those six weeks unassisted. The Defendant did not respond to my requests in a timely manner or provide alternate adjustment to accommodate my mobility issues."); *id.* at 5 ("My complaint regarding accommodations has nothing to do with not having the scooter provided. . . . [but with Defendant] not providing any accommodations from the six-week period from mid May 2013-7/3/2013").

Defendant argues it reasonably accommodated Plaintiff by giving her paid leave when the scooter was not working (*see* Mot. at 1), but does not address its failure to engage in the interactive process during the first six weeks her scooter was broken. *See Humphrey*, 239 F.3d at

6

1137 ("Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."). Liberally construed, the SAC alleges Defendant failed to engage in the ADA's mandatory interactive process during the first six weeks Plaintiff's scooter was broken, which caused Plaintiff to suffer physical harm and need to take time off work to recuperate. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (pro se pleadings must be liberally construed); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotation marks and citation omitted).

For the same reason, and based on the same liberal pro se pleading standard, the SAC also sufficiently alleges that Defendant failed to accommodate Plaintiff's request for accommodation to conduct of group and phone interviews. *See* SAC at 4 ("Another re[q]uest for accommodations [was] the suggestion I conduct[] phone interviews with clients and have them come in to sign their paperwork and bring their verifications in an effort to save interview time (as Ms. O'Neal had complained about me taking more time than the other coworkers to conduct my interviews) which was denied by Ms. O'Neal as well. The agency [has] since adopted similar processing changes to have group interviews and phone interviews."); *cf.* Opp'n at 8-9 ("My physical limitations and energy levels from polio and bilateral carpal tunnel were . . . taxed [by her job duties]. So, any methods that could shorten and expedite my processes would be beneficial to my performing my job.")). Plaintiff requested accommodations that would allow her to perform the interviews faster; O'Neal denied that request. That Defendant subsequently adopted these interview methods shows the requested accommodations were reasonable. The SAC alleges that O'Neal criticized Plaintiff for taking more time than other co-workers to conduct interviews, leading to negative performance evaluations and lack of promotion opportunities.

Defendant's Motion to Dismiss the Failure to Accommodate claim is DENIED with respect to Defendant's failure to engage in the interactive process during the first six weeks Plaintiff's scooter was not functional in 2013, and with respect to Defendant's failure to accommodate Plaintiff's request to conduct interviews in groups or by phone. The Motion is

7

1    otherwise GRANTED. The Court previously advised Plaintiff about the defects of her claim. *See supra* at 2-3. Moreover, nothing in the record suggests Plaintiff possesses facts she was unable to allege in her SAC, FAC, or initial Complaint to otherwise support her failure to accommodate claim. Accordingly, the dismissal shall be without leave to amend. *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) ("Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." (edits in original; internal quotation marks omitted)).

2. Harassment

To state a claim for hostile work environment, Plaintiff must allege facts showing her working environment was objectively hostile or abusive, and that the hostile work environment was based on her disability. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-72 (9th Cir. 2001). The workplace must be "permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). But "a difficult work environment, standing alone, does not give rise to a cause of action under . . . the ADA. Rather, the alleged harassment must be made based on some protected trait, such as . . . disability." *Abdul-Haqq v. Kaiser Emergency in San Leandro*, 2017 WL 550235, at *6 (N.D. Cal. Feb. 10, 2017).

Assuming for purposes of this Order that the incident Plaintiff alleges are sufficient to constitute harassment that is actionable under the ADA, the SAC does not state facts showing the alleged harassment is based on Plaintiff's disability. It only alleges that Plaintiff is the only visibly disabled person in her unit, and that O'Neal and Giometti treated her differently than they treated other workers. *See* SAC at 1-2, 11.

The Court found the FAC did not sufficiently allege the harassment was motivated by discrimination, and the new examples Plaintiff uses to illustrate her supervisors' motivations likewise are insufficient to state a claim. Events surrounding Plaintiff's voluntary demotion in 2009 are not actionable because they occurred more than 300 days before she filed her EEOC

8

complaint.[2] *See* Order re FAC at 8 (discussing failure to exhaust). The SAC alleges Plaintiff's supervisors denied her requests to conduct group meetings and client phone interviews, but subsequently changed its procedures to allow this. SAC at 4 ("The agency ha[s] since adopted similar processing changes to have group interviews and phone interviews."). Plaintiff's allegations that "later other employees requested to do the same and [the request for group meetings with clients and phone interviews] was granted" (*id.*) is insufficient to show the supervisors' decision was based on Plaintiff's disability, rather than other factors, such as a change in policy, or another factor unrelated to Plaintiff's disability. *See, e.g.*, *Del Conte v. Cty. of Santa Clara*, 2016 WL 3916315, at *3 (N.D. Cal. July 20, 2016) (dismissing ADA claim alleging discrimination based on denial of medication because allegations showed "at best speculation, not causation": "Another plausible reading is that the delay arose from negligence (loss of paperwork), rather than a desire to discriminate. In short, [plaintiff] must allege facts against the actual persons who allegedly deprived him of medication because of his disability, not their supervisors."). The SAC does not allege Plaintiff was precluded from using these new procedures once the agency adopted them or that others were allowed to use these new procedures at the time O'Neal denied Plaintiff's request to implement them, at most, it alleges that Plaintiff asked another unidentified co-worker to participate in a group meeting, but that the coworker declined Plaintiff's request. SAC at 4. The other examples of harassment in the SAC were also included in the FAC; the Court once more finds that they "depict conduct that does not rise to the required level of offensiveness" and/or that Plaintiff fails to allege facts sufficient to show they were motivated by Plaintiff's disability. *See* Order re FAC at 12-14.

Nor do the attachments to the SAC show Plaintiff was harassed because of her disability. The October 19, 2001 memorandum suggests the agency was riddled with unprofessional behavior as late as 2001, warranting an instruction that all staff to stop inappropriate behavior, including comments concerning disability. *See* SAC at ECF p.13 (Oct. 19, 2001 memo). But this

---

[2] The SAC does not allege Plaintiff filed an EEOC charge, but Plaintiff stated the date of her EEOC charge in the original Complaint. *See* Compl. ¶ 8 ("I filed charges with the [EEOC] regarding defendant's alleged discriminatory conduct on or about 9/2013.").

9

memorandum, in and of itself, is insufficient to demonstrate that Plaintiff personally experienced harassment based on her disability within 300 days of the date she filed her EEOC complaint twelve years later in 2013. The more recent, 2007 Standards of Conduct suggest Defendant implemented anti-harassment regulations and policies, including policies based on disability, but they also do not show Plaintiff experienced harassment based on her disability within 300 days of the date she filed her 2013 EEOC complaint.

In her Opposition, Plaintiff for the first time explains that incidents of harassment "became more frequent and severe as problems with the scooter and other requested accommodations were needed and/or requested. They viewed the process as bothersome and me as a problem. This is what ties my disability to the hostile work environment and harassment. Although the verbal insults and attacks were subtle or disguised, the Defendant's actions spoke loudly." Opp'n at 12. These allegations are absent from the SAC. *See* SAC. Even if the Court granted Plaintiff leave to amend the SAC to add these allegations, as stated, they are conclusory. For instance, Plaintiff provides no details about how the harassment and/or work environment became more severe, who verbally insulted and attacked her, or what those persons stated. Moreover, the SAC's allegations of harassment do not reflect an increase in incidents of harassment and are not tied to Plaintiff's requests for the scooter or other accommodations. *See id.* The argument Plaintiff offers her Opposition does not allow the Court to infer she could plead allegations that are not conclusory.

The Court gave Plaintiff leave to amend these claims "one final time" in April 2017. *See* Order re FAC at 15. When Plaintiff failed to timely oppose Defendant's Motion to Dismiss the SAC, the Court issued an order to show cause. OSC, Dkt. No. 39. Upon receiving Plaintiff's response to the OSC indicating Plaintiff had been dealing with considerable health challenges, the Court discharged the OSC; found Plaintiff's Opposition did not address most of Defendant's arguments and struck it; stayed the action to allow Plaintiff to recuperate; and extended Plaintiff's time to respond to the Motion by filing a new Opposition. *See* Response, Dkt. No. 40; First Opp'n, Dkt. No. 41; Order Discharging OSC, Dkt. No. 42. Plaintiff requested and the Court granted an additional extension of time. Mot. for Extension, Dkt. No. 43; Order Granting Extension, Dkt. No. 44. Despite these extensions and the opportunity to file a more fulsome

10

Opposition, Plaintiff has not cured the deficiencies the Court previously identified. Plaintiff also continues to rely upon many of the same allegations the Court already found did not state a claim for harassment. *Compare* Order re FAC at 13-14, *with* SAC at 5-7. Because Plaintiff has failed to cure deficiencies by amendments previously allowed and does not indicate in either of her two Oppositions that she can amend the harassment allegations successfully, the Court GRANTS the Motion to Dismiss this claim without leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's failure to accommodate claims except to the extent the claims pertain to Plaintiff's request to conduct interviews in groups or by phone, and to the extent they pertain to Defendant's failure to engage in the interactive process during the first six weeks Plaintiff's scooter was not functioning in 2013. The Court also GRANTS Defendant's Motion to Dismiss Plaintiff's harassment claim. The dismissals are WITHOUT LEAVE TO AMEND. Plaintiff's retaliation claim survives to the extent it is based on allegations that Defendant retaliated against Plaintiff for taking administrative leave in 2013 by significantly changing the conditions of her employment. *See* Order re FAC at 11-12 ("Plaintiff's allegations are sufficient to state a claim that, as a result of taking protected leave, Defendants retaliated against her by significantly changing her conditions of employment, by failing to follow 'protocol' and reassign cases while Plaintiff was on leave, increasing her work load, and assigning tasks to her that were normally done by other categories of employees."); *see* SAC at 8-9.

**The parties shall appear for an initial Case Management Conference at 10:00 a.m. on January 25, 2018 at 450 Golden Gate Avenue, 15th floor, Courtroom B, San Francisco, California 94102**. No later than January 11, 2018, the parties shall meet and confer telephonically regarding the topics required to be included in a Joint Case Management Conference Statement. *See* Civ. L.R. 16-9(a); *see also* Standing Order for All Judges of the Northern District of California—Contents of Joint Case Management Statement (available at http://cand.uscourts.gov/mejorders). No later than January 18, 2018, the parties shall file a joint CMC statement if possible or separate statements if a joint statement is not practicable. The

parties should focus on the type of alternative dispute resolution (ADR) process they believe will be most productive, and on the type of discovery they believe they will need before ADR can be productive.

The Court once more notes (*see* Order Discharging OSC) that Plaintiff may seek assistance from the Legal Help Center, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco, by calling 415-782-8982, or by signing up for an appointment on the15th Floor of the Federal Courthouse in San Francisco, 450 Golden Gate Avenue, San Francisco, California. There is also a Legal Help Center in Oakland, located on the 4th Floor, Room 470S, of the United States Courthouse, 1301 Clay Street, Oakland. At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at http://cand.uscourts.gov/helpcentersf.

**IT IS SO ORDERED.**

Dated: December 6, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge